**Frank B. McGEHEE, Appellant,**

v.

**H. Lamar McGEHEE et al., Appellees.**

No. 15876.

Court of Civil Appeals of Texas.

Feb. 7, 1958.

Rehearing Denied March 14, 1958.

Ben Hagman, Weatherford, Charles J. Winikates, Dallas, for appellant.

Borden & Hand and I. B. Hand, Weatherford, for appellees.

BOYD, Justice.

On February 28, 1933, Jessee S. Sumrall and wife deeded a tract of land to Frank L. McGehee for a consideration of $3,-775.50, $500.50 of which was paid in cash and was furnished by Frank K. McGehee. The balance of the purchase price was represented by vendor's lien notes executed by Frank L. and endorsed by Frank K. McGehee. On November 24, 1934, Sumrall recovered judgment against Frank L. and Frank K. McGehee for $4,147.50, being the amount of the principal, interest, and attorney's fees owing on the purchase money notes, and for foreclosure of his vendor's lien. On November 14, 1935, Sumrall and Frank L. McGehee entered into a written contract whereby it was agreed that McGehee would convey the land to Sumrall in satisfaction of the debt, with the understanding that if McGehee should pay to Sumrall $2,800 before January 1, 1936, or should pay $3,500 any time during the year 1936, the land would be reconveyed to McGehee by Sumrall free of the debt. Thereafter, Sumrall was paid with the proceeds of a loan on the land procured by Frank L. McGehee and his wife.

On October 8, 1949, Frank L. and his wife, Mary E. McGehee, deeded the land to H. Lamar McGehee for the recited consideration of $1.00 and the assumption of a $1,700 loan on the land. On August 25, 1953, H. Lamar deeded a one-half interest in the land to Otho McGehee for the recited consideration of one dollar "and other consideration." Frank K., H. Lamar, and Otho McGehee are sons of Frank L. and Mary E. McGehee.

Appellant Frank B. McGehee, a son of Frank K., filed suit against H. Lamar and Otho to recover the land, alleging that Frank K. had purchased the land and had it deeded to Frank L. to hold in trust for appellant during the lifetime of Frank L. and Mary E., who were to have a life estate therein, and that Frank L. so held the land in trust. He also alleged that at the time Frank L. executed the deed to H. La-

mar he was mentally incapable of understanding his acts, and that H. Lamar knew that Frank L. held the land in trust for appellant and had no right to convey anything except his life estate. He asked that the deed be canceled.

The jury found that Frank L. did not agree with Frank K. that the property would belong to appellant upon the death of himself and Mary E., and judgment was rendered that appellant take nothing.

Appellant contends that the court erred in overruling his motion for instructed verdict and his motion for judgment non obstante veredicto, and that it was error to refuse his requested issue inquiring if, at the time the deed from Frank L. to H. Lamar was executed, Frank L. was of unsound mind. We have concluded that the points must be overruled.

Frank K. died in January, 1937; Frank L. died in May, 1950; and Mary E. died in February, 1952. Mrs. Eastman, appellant's mother, the only living witness to the conversations between Frank L., Mary E., Frank K., and herself, concerning the purchase of the land, testified that she opposed buying the land "because I didn't see any way that we could possibly pay for the property if we purchased the property, and also they explained to me that it would be a means of taking care of them and also providing an estate for our little * * * Q. Who is 'them?' A. Taking care of Granddaddy and Grandma McGehee which we had done I mean ever since we had been married * * *. A. The conversation was merely this, that if we would put the money * * * Q. Now, who? A. If Frank Keener and I would make the purchase price on this farm, that we would be taking care of them, and * * * Q. Who is 'they' or 'them?' A. Granddaddy and Grandmother McGehee, that we would be taking care of them during their lifetime, they said that they could pay for the place out of the income from the property, and that the property then in turn could be left to Frank Boaz McGehee at their

death." She further testified that she used $1,500 of her separate funds to build a house and barn on the farm; that Frank L. and Mary E. told her on the day of her husband's funeral not to worry about anything, that they were holding the property in trust for appellant; that during the first or second summer after Frank K.'s death, Mary E. came to visit witness and while at her home Mary E. mentioned the fact that they were holding the land for appellant.

A paper signed by Frank L. and introduced in evidence recited that Frank K. "purchased" the land and had the deed made to Frank L., that $500.50 was paid in cash, and notes were given for $3,275; the notes were endorsed by Frank K. and he "expected to assume the responsibility for their payment"; it was agreed that $500 worth of improvements would be put on the land the first year and between $1,500 and $1,800 worth of improvements were put thereon; "Having made these extensive improvement and being hard pressed for money by reason of the depression and failure of many business enterprises in which he was interest my son found himself unable to help me meet these maturing notes and interest two and 3/4 years passes without our being able to meet either notes or interest * * *." It was further recited that considerable expense was incurred in the foreclosure suit, and that only $100 had been paid to Sumrall under the agreement to pay $2,800 in full satisfaction of the debt, and that a loan from the Federal Land Bank of Houston had been applied for, and "We * * * hope to be able to accept Mr. Sumrall's offer."

Sumrall executed a release of the judgment on November 14, 1935. The release recites that Sumrall and Frank L. McGehee had agreed upon a settlement of the judgment. On February 3, 1936, Frank L. and Mary E. executed a deed of trust on the property to secure a loan made by the Land Bank Commissioner, the deed of trust reciting that Frank L. and Mary E. "have in their own right a good and perfect title" to the property. This instrument was re-

corded in the office of the County Clerk of Parker County on February 8, 1936.

Otho testified that Frank K. told him in 1936 that he "was washing his hands of the entire affair," and that he said, "'If you can, help those folks get that place paid for.'" There was no evidence that Frank K. made any payments other than the initial payment of $500.50.

It is necessary that plaintiff go beyond the ordinary burden of proof in order to overcome the presumption that an apparent owner of property is the true owner and show by clear, satisfactory, and convincing evidence, facts to overcome that presumption, and if the evidence tendered is equally susceptible of a conclusion that the property is held otherwise, it is insufficient to show a trust. 42 Tex.Jur., p. 687, sec. 76, and authorities there cited.

"Especially where a grantee has been in possession of property, as ostensible owner, for a considerable time, and witnesses are dead who might have rebutted the testimony on which the trust depends, such testimony will be closely scrutinized for weight and consistency; and if the evidence is vague and unsatisfactory it will be held insufficient although the proof in favor of a trust is preponderant * * *." 42 Tex.Jur., p. 688, sec. 76.

█ Without disbelieving any of Mrs. Eastman's testimony, we think the jury could infer that the agreement, if any, that appellant was to have the property after the life estate of his grandparents was conditioned upon Frank K. McGehee's paying the purchase price. We cannot say, as a matter of law, that there was no evidence to carry the case to the jury.

█ We fail to find any evidence which would have supported a finding that Frank L. McGehee was of unsound mind on October 8, 1949, when he executed the deed to H. Lamar. Several witnesses testified that he was of sound mind, and no witness testified that he was of unsound mind. The most that could be said in favor of appel-

lant's contention is that H. Lamar signed a complaint on April 14, 1950, alleging that his father was of unsound mind, and he was committed to an institution, and H. Lamar admitted that he "reckoned" that he testified at the lunacy trial that Frank L. had been mentally incapacitated since October, 1949. The witness testified, however, that "At the time this was brought up, at the time we was talking about," his father was of sound mind.

Finding no error, the judgment is affirmed.